# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

LINDA C. WILLIAMS, for herself
and for all others similarly situated, and
SAM WILLIAMS, individually,

        Plaintiffs,

        v.　　　　　　　　　　　　　　　　No. 1:14-cv-01010-WJ/GBW

FOREMOST INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## and
## DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S CLASS
## ALLEGATIONS AND DISMISS HER CLASS CLAIMS

        THIS MATTER comes before the Court upon a Motion for Summary Judgment filed on

January 23, 2015 by Defendant Foremost Insurance Company ("Foremost" or "Defendant")

**(Doc. 25)** and Defendant's Motion to Strike Plaintiff's Class Allegations and Dismiss Her Class

Claims, filed February 10, 2015 **(Doc. 39)**.  Having reviewed the parties' briefs and applicable

law, the Court finds that Defendant's Motion for Summary Judgment should be granted, and that

Defendant's Motion to Strike should be denied as moot.

## BACKGROUND

        Plaintiff Linda Williams ("Plaintiff" or "Williams") filed this lawsuit in the First Judicial

District Court in the County of Santa Fe on October 3, 2014, and Defendant subsequently

removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332 and the

Class Action Fairness Act, 28 U.S.C. § 1332(d).   The lawsuit concerns Foremost's alleged

misconduct in adjusting Williams' bodily injury claim, arising out of an accident in which she fell at her friends' home.   Specifically, Williams alleges that Foremost violated New Mexico statutes by interviewing her too soon after her slip and fall.   Defendant asserts that Plaintiff's claims fail because (1) she is not a proper plaintiff under the statutes she invokes, and (2) there is no case, controversy or statutory basis allowing her to seek equitable relief.   Count I of the Complaint asserts a violation of the Unfair Trade Practices Act, NMSA § 57-12-1 et seq. ("UPA").   Count II asserts violations of the Trade Practices and Frauds Act ("TPFA"), NMSA 1978 § 59A-16-1 et seq., which is also known as the Unfair Claims Practices Act ("UCPA"), but which will be referred to hereinafter as "TPFA" to avoid confusion.[1] Count III seeks to enjoin Defendant from contacting injured New Mexicans in violation of the New Mexico Release Act, NMSA 1978, § 41-1-1; and Count IV seeks a declaratory judgment under NMSA 1978, § 44-6-1, the Declaratory Judgment Act.   The Complaint contains allegations that are made as part of a putative class representing victims who were injured in New Mexico where the actions taken by Foremost were illegal.  Doc. 1-2 at 14.  Plaintiffs seek damages for loss of consortium as well as punitive damages.

I.     **Undisputed Facts**

The facts presented here are supported by exhibits attached to the pleadings, and they are undisputed unless otherwise noted.   A large number of the supporting exhibits consist of correspondence between counsel addressing various issues relating to the case and negotiating a disposition of the case.   Also, the factual narrative here includes those additional facts presented

---

[1]   Chapter 57 of the New Mexico statutes governs Trade Practices and Regulations, while Chapter 59A pertains to the insurance code.  Sections 59A -16-3 to -4 are sometimes referred to as the Insurance Trade Practices and Fraud Act ("TPFA"), while § 59A-16-20 is referred to as the Unfair Claims Practices Act ("UCPA").  However, New Mexico courts refer to both provisions in Chapter 59A as the Unfair Insurance Practices Act.   *See Valdez v. Metropolitan Property & Cas. Ins. Co.,* No. Civ. 11-507 JB/KBM, 2012 WL 1132414 at *1, n.1 (citing *Smoot v. Physicians Life Ins. Co.*, 135 N.M. 265, 267, 269, 87 P.3d 545, 547, 549 (Ct. App.2003)).

by Plaintiff which are material and not disputed by Defendant. Based on the Court's review, none of Plaintiff's additional material facts are disputed by Defendant.

Plaintiff does not allege that she has been insured with Foremost at any time relevant to this lawsuit, or that she has ever made any other claim against a Foremost policy other than the claim that is the subject of this lawsuit. She claims, instead, that she was injured by Foremost insureds Dean and Martha Leavengood.

The Leavengoods purchased a manufactured home insurance policy from Foremost, covering their mobile home in Elephant Butte, New Mexico. On May 28, 2013, the Leavengoods reported a claim against that policy after Williams, a friend and houseguest of the Leavengoods, allegedly tripped over a toy on their patio and broke her hip.[2] The accident occurred on May 26, 2013.

Foremost adjuster Jordan Richardson ("Richardson") spoke with Williams about the accident on May 31, 2013. Plaintiff responds to this fact by adding that Richardson initially called Plaintiff on May 30, 2013, while she was in the hospital and while she was "incapacitated and could not respond to the call." Pltff's Resp. to Statement of Fact ("SOF") 4. Richardson was aware that Plaintiff was in the hospital when these calls were made. Defendant does not object to the additional fact, stating that Richardson had called Plaintiff on May 30th, but correctly characterizes the other comment as being unsupported by the evidence and irrelevant to the instant motion, and the Court agrees with this assessment. There is no support in the transcript of either of the phone calls made by Richardson to Plaintiff for the comment that Williams was "incapacitated and could not respond to the call." Williams asked to end the first

---

[2] Plaintiff "denies" this statement in part because she claims that it was her leg, and not her hip that was injured. Aside from the fact that this detail is entirely irrelevant to the issues in this lawsuit, there is evidence supporting Defendant's statement that Plaintiff's hip was injured, consisting of a description of Plaintiff's injuries by her attorney. *See* Ex. 6 at 1 ("[plaintiff] was diagnosed with a "left intertrochanteric hip fracture").

call on May 30 because she was "just about to head into the bathroom."   Doc. 37, Ex. 5B at 2:17-19.  Richardson obliged and, rather than calling back in five minutes as Williams requested, did not call back until the next day.   *Id.*   As part of his investigation, Richardson also spoke with Mr. Leavengood about the facts of the accident.

After investigating the claim, Foremost determined the Leavengoods were not at fault for the accident.  About one month later, Foremost received a letter from Plaintiff's attorney, Jaime Rubin ("Rubin"), seeking further explanation for the denial of liability on her claim.  Although it concluded the Leavengoods were not at fault for the accident, Foremost spent the next year negotiating Plaintiff's claim with Rubin so as to protect its insureds from litigation.   Plaintiff objects to Defendant's reference to negotiation of the case in Defendant's SOF 8, citing to Fed. R. Evid. 408(a)(2) which says that statements made in compromise negotiations are not admissible.  Plaintiff's reliance on this rule is misplaced because the rule applies only when the evidence is offered "either to prove or disprove the validity or amount of a disputed claim," *see* Fed. R. Evid. 408(a), and Defendant is not relying on the history of settlement negotiations to prove either party's liability for the underlying slip-and-fall accident.  Further, Defendant's SOF 8 does not reveal any specific "conduct or statement" made during the negotiations but simply notes that negotiations took place, which would not be excluded under Rule 408(b).

During the course of negotiations, Rubin informed Foremost he was "concerned" Foremost had taken a statement from Plaintiff "within a few days" of her accident while she was still in the hospital. He raised this "concern" with Foremost at least six times, characterizing it at different times as common law bad faith, a violation of the New Mexico Insurance Code, and a violation of the Release Act.[3]  Rubin admitted in the course of negotiations that the Release Act

---

[3]  Plaintiff does not object to this statement as inadmissible evidence of compromise.  As Defendant notes, failure to object would serve to waive any prior objection Plaintiff may have had based on Fed. R. Evid. 308.  *Eisenberg v.*

provided its own remedy – a "fairly quick repudiation" of the statement – which Plaintiff did not exercise because, as Rubin stated, his client "did not have access to counsel." Ex. 12 at 2.[4]

Also during the course of negotiations, Foremost offered to disregard the May 31, 2013 statement from Plaintiff and take a second statement in which her counsel could participate. Plaintiff rejected that offer.   On July 10, 2014, after negotiating for nearly a year, Williams signed a Settlement Agreement releasing her claims against the Leavengoods in exchange for $24,000 from Foremost.  Williams agreed in the settlement that the Leavengoods' liability was disputed and she was receiving money in exchange for a release of doubtful liability claims. Shortly after Williams signed that Settlement Agreement, she filed this lawsuit, claiming Foremost improperly obtained a statement from her too soon after her accident.

## II.    Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Horizon*, 220 F.3d at 1190. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the non-moving party on the evidence presented." *Id*.

---

*University of New Mexico*, 936 F.2d 1131, 1134 (10th Cir. 1991) (by submitting an affidavit, attorney waived any claim that affidavit should have been excluded as evidence of offer of compromise).

[4]  In SOF 10, Defendant states that Rubin also admitted the Release Act does not create a private cause of action, but the exhibit Defendant relies on does not contain this information and the Court accepts Plaintiff's objection to this fact as disputed, notwithstanding Defendant's efforts to rehabilitate the fact in the reply.  Plaintiff also offers legal arguments in response to Defendant's SOF 10 which are irrelevant in the context of a factual presentation.

## DISCUSSION

Defendant offers several arguments for the dismissal of Plaintiff's claims. First, Defendant claims that Plaintiff has no statutory basis for pursuing any of her claims (for money damages or otherwise) under the TPFA and the UPA, for two reasons: (a) she is a third-party claimant, who did not purchase and is not a "special beneficiary" of the policy at issue; and (b) she was required to reduce her bodily injury claim to a judgment against Foremost's insureds, which she did not do—instead, she chose to settle that claim. Defendant also contends that Plaintiff's declaratory and injunctive claims fail for lack of Article III standing because Plaintiff does not allege – and cannot prove – that she is in any danger of being subjected to Foremost's alleged unfair practices in the future. Defendant argues that because Plaintiff lacks Article III standing and is not otherwise entitled to assert her claims for relief, she cannot pursue either her individual or class claims against Foremost. Defendants also contends that even if Plaintiff could establish a viable case or controversy, her claim for injunctive relief under the TPFA is barred. The Court will address each of these arguments in turn.

## I.      Claims Brought Under the TPFA

Defendant contends that because Plaintiff was not insured with Foremost, she lacks any basis to pursue claims for monetary or equitable relief under the TPFA because the statute does not afford third-party claimants like Plaintiff a remedy.

Section 59A–16–20 of the Trade Practices and Fraud Article (Article 16) of the Insurance Code prohibits insurance companies from engaging in certain "unfair and deceptive practices," which include "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." NMSA 1978, § 59A–16–20 and 20(E). Section 59A–16–30 of the same article grants a right of action to any person

covered by Article 16 "who has suffered damages as a result of a violation of that article by an insurer or agent." NMSA 1978, § 59A–16–30. *Hovet v. Allstate Ins. Co*., 135 N.M. 397, 398-99 (2004).

A.    No Special Beneficiary Status

Defendant asserts that Williams is not a proper plaintiff to bring suit under the TPFA because third-party claimants cannot sue an insurer for alleged TPFA violations unless they can "demonstrate a special beneficiary status." *Hovet*, 135 N.M. at 402. Defendant points out that New Mexico law has carved out narrow exceptions for third-party beneficiary status such as for claimants on workers' compensation policies and automobile liability policies. In *Russell v. Protective Ins. Co*, the New Mexico Supreme court held that an injured worker was an intended beneficiary of the contract between his employer and insurer and was to be deemed an insured entitled to bring a private cause of action against the insurer. 107 N.M. 9 (1988). In *Hovet,* the NM Supreme Court held that the unfair claims practices section of the Insurance Code (the TPFA) created a private right of action for victims of automobile accidents. 135 N.M. at 402.

The Supreme Court's underlying rationale in *Hovet* was that a private right of action for third parties who are victims of automobile accidents was "consistent with a statutory scheme that was intended to benefit both insureds and third-party claimants." *Id.* The court expanded third-party beneficiary status to victims of automobile accidents because of the "very nature of automobile liability insurance, where the insured's claims usually involve claims by someone else against the insured." 135 N.M. at 402. Thus, the statute was found to provide a benefit for the general public as well as the insured. *Id.* (finding that "[a] private right of action for third parties who are victims of automobile accidents is consistent with a statutory scheme that was intended to benefit both insureds and third-party claimants benefit public"). Unlike

indemnification insurance, which "simply protects the owner of the vehicle or operator from loss," the nature of compulsory automobile liability insurance "is intended to provide a benefit to the general public." *Raskob v. Sanchez,* 126 N.M. 394 (1998); *cf. Russell,* 107 N.M. at 13 (noting that workers' compensation is more than just indemnity between the insurer and the insured), *cited in Hovet,* 135 N.M. at 403.   Further, automobile liability insurance is compulsory in New Mexico.  *See* § 66–5–208; *Hovet,* 135 N.M. at 403.

Homeowner's insurance, on the other hand, is not mandated by law and is primarily intended to benefit the homeowner and not the general public.  *See* 9A COUCH ON INS. § 128:1 ("Homeowners' liability insurance is designed to protect homeowners from risks and activities associated with the home") (citing *Worcester Mut. Ins. Co. v. Marnell*, 496 N.E. 2d 158, 161 (Mass. 1986) ("Clearly, the manifest design of homeowners' insurance is to protect homeowners from risks associated with the home and activities related to the home.")).  In other words, because manufactured home insurance "simply protects the owner . . . from loss," it is the type of "indemnification insurance" New Mexico courts have distinguished from mandatory liability insurance that benefits the public.  *Raskob*, 126 N.M. at 396 (distinguishing indemnification insurance from mandatory auto liability insurance, for which a direct action against the insurer may be maintained).

Plaintiff responds by relying on these same cases, arguing that the language in § 59A-16-30 nevertheless applies to her because she has "suffered damages" as a result of Defendant's alleged violation of the statute.  She clearly mischaracterizes both the language of the statute and the relevant case law as providing TPFA standing to any class of people protected by any insurance statute.   Section 59A-16-30 starts out by stating that "[a]ny person covered. . ." which necessarily assumes that an individual comes within the purview of the statute in the first place.

This language does not necessarily confer standing and beneficiary status on anyone who alleges a statutory violation by any insurer.  Plaintiff also completely ignores the rationale underlying the *Hovet* and *Russell* decisions, which considered whether the policies at issue were both mandated by law or benefitted the general public.

The narrow construction New Mexico courts have afforded the TPFA is demonstrated by the court's analysis in *Jolley v. Associatedd Electric & Gas Insurance Services Ltd.*, 148 N.M. 436 (2010).  Even though the New Mexico Supreme Court recognized a special beneficiary status for victims of automobile accidents under the TPFA in *Hovet*, the court refused to extend this status any further to lawsuits against excess liability insurers.  The court explained that the purpose of excess coverage insurance was "different from that of compulsory automobile liability insurance" in that it is intended "for the financial protection of the insured, not the protection of members of the public who may be injured by the insured's operation of an automobile." 148 N.M. at 441.  The New Mexico Supreme Court clarified further, stating that, unlike automobile liability insurance, excess insurance was not required.  *Id.* at 437 (holding that "neither the holding nor the doctrinal underpinnings of *Hovet*" support allowing "claims by third parties against carriers providing nonmandatory excess liability insurance").

The basis for all of Plaintiff's claims in this lawsuit is the contact made by Richardson, the Foremost adjuster, with Williams while she was still in the hospital.  Plaintiff contends that this conduct violated the Release Act.  Plaintiff has not alleged this as a separate claim, but instead includes it as a basis for violations of both the TPFA and the UPA.  *See* Compl, ¶¶ 12-15, 26, 31.  Based on an overly broad reading of *Hovet* and *Jolley*, Plaintiff comes to the conclusion that New Mexico's Release Act, NMSA 1978, § 41-1-1, benefits a class of people which

includes her, and affords her standing to bring suit under the TPFA.   The Release Act states in part that:

> A. No person whose interest is or may become adverse to a person injured who is either under the care of a person licensed to practice the healing arts, or confined to a hospital or sanitarium as a patient shall, within fifteen days from the date of the occurrence causing the person's injury:
>
>> (1) negotiate or attempt to negotiate a settlement with the injured patient; or
>> (2) obtain or attempt to obtain a general release of liability from the injured patient; or
>> (3) obtain or attempt to obtain any statement, either written or oral, from the injured patient for use in negotiating a settlement or obtaining a release.

NMSA 1978, § 41-1-1(A).   Plaintiff's contention that the Release Act confers a third-party beneficiary status is premised on a fundamental misunderstanding of why the New Mexico Supreme Court expanded standing under the TPFA to third parties under the Workers' Compensation Act and the Mandatory Financial Responsibility Act.   Insurance under those statutes was required by law and was also found to be for the benefit of specified classes of third-party claimants as well as the insured (employees and injured members of the driving public, respectively).   Those two considerations are absent from Plaintiff's situation.  Under Plaintiff's theory of beneficiary status under the TPFA, one would be able to sue an insurer for a violation of *any* statute under the TPFA, which defies common sense as well as the relevant case law.  Also, the language in the TFPA specifically listing the prohibited "unfair and deceptive practices" does not envision such a broad reading of generic violations.

It is undisputed that Williams is not an insured under the Foremost policy, and under New Mexico law she cannot be an intended third-party beneficiary of the policy.  Without this status, Plaintiff cannot pursue a claim under the TFPA absent those circumstances where the New Mexico Supreme Court has recognized third-party beneficiary status.

B.      The Court Will Not Certify Question to New Mexico Supreme Court

Plaintiff's position is that public policy and New Mexico law militate that a class of persons protected by the Legislature from specific forms of unfair handling of claims has standing under the TPFA. Plaintiff suggests that the Court certify the question of her status to proceed under the TPFA to the New Mexico Supreme Court if the Court has any doubt about the issue. *See Armijo v. Ex Cam, Inc*. 843 F.2d 406 (10th Cir. 1988) (whether to certify a question of state law to the state supreme court is within the discretion of the federal court). The Court does not have any doubt about this issue and finds that certification will not be necessary for the simple reason that relevant New Mexico law provides the necessary guidance.

New Mexico law construes third-party beneficiary status in the context of the TPFA narrowly. The "paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Valdez v. Cillessen & Son,* 105 N.M. 575, 581 (1987). New Mexico law has extended the scope of third-party beneficiary status sparingly, as indicated in *Russell, Hovet* and *Jolley*. Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law. *Id.* Plaintiff mistakes the absence of law on her side with the law being either exceedingly complex or unsettled, which the Court finds it is not. The rationale for the holdings in *Russell* and *Hovet* does not apply here for lawsuits brought by third parties under homeowners' insurance, and there is no reason to certify the question to the state Supreme Court in the hope of a different answer.

Therefore, the Court finds that Plaintiff is not a proper party to bring a claim under the TPFA under relevant New Mexico law. Williams concedes that she is not Foremost's insured, and she does not meet the narrow exception in which a non-insured can assert a TPFA claim; nor

is there any legal basis for extending the present state of the law beyond what the New Mexico Legislature intended within the scope of the statute.

C.    <u>Plaintiff's Failure to Comply with Procedural Requirements Under TPFA</u>

As an alternative argument, Defendant contends that even if Plaintiff could show she could maintain a third-party claim against Foremost, her claim would not get far because she did not comply with the procedural requirements in order to bring such a claim under the TPFA. Specifically, Defendant argues that Plaintiff cannot pursue a TPFA claim because she did not obtain a judgment against the Leavengoods.  Under New Mexico law, an automobile accident victim may file an action against a liability insurer for unfair claims practices based on failure to settle only after the conclusion of the underlying negligence litigation and after a judicial determination of fault in favor of the third party victim and against the insured:

> [T]he third-party claimant will not even have an action under Section 59A–16–20(E), **unless and until there has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying negligence action**. This precludes any claims under Section 59A–16–20(E) if the parties settle. Those electing to settle their claims without a judicial determination of liability waive any claims under the Insurance Code for unfair settlement practices. If we were to allow a third-party claimant who settles to later bring a claim against the insurance company for not settling, we would needlessly encourage serial litigation and frustrate the policy reasons, like finality, that encourage settlement.

*Hovet*, 135 N.M. at 404-05 (emphasis added); *see* NMSA §§ 59A–16–20, 59A–16–30.    The Court has already determined that Plaintiff cannot sustain a claim under the TPFA because she lacks the status of a third-party beneficiary, but Plaintiff would also be foreclosed from proceeding under this statute for the reason that Plaintiff reached a settlement with Defendant.

Plaintiff's only response to this argument is to note that she is not pursing a bad faith claim but rather is alleging violations of a statute, that is, the Release Act.  Plaintiff mischaracterizes *Hovet*, which clarified that its decision dealt with an alleged statutory violation,

and not a common-law bad faith claim.  Thus, *Hovet's* judgment requirement before proceeding with a TPFA claim is on point with Plaintiff's situation.   *See Hovet,* 135 N.M. at 405 ("We emphasize that in this opinion we are recognizing a statutory, not a common-law, cause of action).   Therefore, even if Plaintiff was entitled to third-party beneficiary status under the Leavengoods' homeowner's policy, she is foreclosed from pursuing a TPFA claim because she has not complied with the judgment requirement before proceeding under that statute.

## II.      Whether Plaintiff is a Proper Party Under the UPA

Defendant next argues that Plaintiff cannot sue under the Unfair Trade Practices Act ("UPA") because she did not purchase the insurance policy at issue.   Plaintiff is suing Defendant under the consumer-protection provisions § 57-12-2(D) and (E) of the statute, accusing Defendant of "using exaggeration, innuendo or ambiguity" prohibited by NMSA 1978, § 57-12-2(D)(14), and "tak[ing] advantage of the lack of knowledge, ability, experience or capacity of a person") which is prohibited by § 57-12-2(E).  *See* Compl., ¶¶ 23-24.

An "unfair or deceptive trade practice" applies to misleading statements or representations "*made in connection with the sale* . . . of goods or services." NMSA 1978 § 57-12-2(D) (emphasis added).   Likewise, an "unconscionable trade practice" means "an act or practice *in connection with the sale*. . . of any goods or services." NMSA 1978 § 57-12-2(E) (emphasis added).   Although the UPA may allow claims against insurers in some circumstances, the plaintiff must "show that the statement was made [or the offending act or practice was committed] *in connection with the sale of the insurance.*" *Dellaira v. Farmers Ins. Exch*., 136 N.M. 552, 558 (Ct. App. 2004) (emphasis added).

Plaintiff does not dispute that she did not purchase the homeowner's policy at issue here, but insists that New Mexico law permits third parties to bring claims under the UPA—which

begs the question of whether the third party is a consumer.   Plaintiff cites to several cases that are completely inapposite to her situation either because the plaintiffs *were* consumers of the good or service at issue, or because the plaintiff was in privity with the insurer/seller.   *See Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 442-43 (Ct. App. 2007); *Dellaira*, 136 N.M. at 558.   Plaintiff also cites to an interim order in *Navajo Nation et al v. Urban Outfitters, Inc., et al.*, 935 F. Supp. 2d 1147 (D.N.M. 2013).   However, the presiding judge in that case, United States District Judge Leroy Hansen, ordered additional briefing on the issue and came to the conclusion that New Mexico opinions on the subject "clearly have stated that the UPA gives standing only to buyers of goods or services."   *Navajo Nation*, Civil No. 12-195 LH/WDS, *17 (Doc. 81 at 18, attached as Deft's Ex. 1 to Reply).   Plaintiff completely sidesteps the final conclusion of the Court, which is directly contrary to her position.

Because New Mexico law currently restricts UPA claims to actual consumers of goods and services, there is no basis to expand the UPA to give standing to a non-consumer third-party claimant like Plaintiff.

## III.   Equitable Claims

Plaintiff seeks equitable relief, relying on the TPFA, UPA and the Release Act.   Count III seeks to enjoin Defendant from contacting injured New Mexicans in violation of the New Mexico Release Act, NMSA 1978, § 41-1-1. Compl., ¶¶ 34-36.   Count IV seeks a declaratory judgment under NMSA 1978, § 44-6-1 (Declaratory Judgment Act), claiming that the alleged actions of Defendant "will likely continue on into the future unless the Court declares their illegality and unfairness. . . ."   Compl., ¶ 39.

A.   <u>Standing for Equitable Claims</u>

14

Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). The case or controversy limitation requires that a plaintiff have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992). The plaintiff bears the burden of establishing the elements of standing. *Id.* A plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. *Id.* An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Id.* These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

At this stage in the litigation, Plaintiff must plead the elements of standing in accordance with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Threadbare recitals of the elements," which are "supported by mere conclusory statements," will no longer suffice at the pleadings stage. *Iqbal*, 559 U.S. at 678. Plaintiff's claims for standing "do not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Twombly*, at 555.

Plaintiff seeks injunctive relief for her equitable claims. Merely asserting that she was wronged by Defendant is insufficient to prove standing for claims for injunctive relief. For both her declaratory and injunctive claims, Plaintiff must demonstrate *continuing* illegal actions or continuing consequences to herself. *See Buchwald v. Univ. of N.M. Sch. of Med.,* 159 F.3d 487,

495 (10th Cir. 1998) (defendants not immune from plaintiff's claims "insofar as she is seeking a future injunction ordering her admission to university"); *Johnson v. Lally,* 118 N.M. 795, 799 (Ct. App. 1994) ("[I]t is clear that past wrongs, even unconstitutional wrongs, do not create a foundation for declaratory relief without either continuing illegal actions or continuing consequences to Plaintiff.").   In order to pursue both her declaratory and injunctive claims, Williams must therefore demonstrate a "palpable chance" of being subjected to the allegedly illegally conduct in the future. *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) (denying injunctive relief to a plaintiff who did not "demonstrate a good chance of being likewise injured in the future").   Plaintiff does not allege any facts from which the Court can reasonably conclude she is in "real" or "immediate" danger of being injured by Foremost in the future related to the allegations she has made; and if the situation were ever to repeat itself, Plaintiff could simply refuse to speak with Foremost adjusters.   In other words, the situation is almost incapable of repeating itself, so that allegations of future harm would be nothing more than sheer speculation.

Plaintiff contends that she has standing for both her injunctive and declaratory claims, and she claims that the correct inquiry on this issue is whether she has a "zone of interest" in this matter.    However, Plaintiff confuses "standing" in the general sense with "standing" in the context of her equitable claims.  A "zone of interest" inquiry takes into account the prudential considerations of standing after a court finds that the constitutional requirements are met.  *See Valley Forge Christian Coll.*, 454 U.S. 464, 472 (1982).   In order to meet the prudential requirements of standing, a plaintiff's injury must fall within the "zone of interest" to be protected or regulated by a statute or constitutional guarantee.  *See Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1450-51 (10th Cir. 1994).   Even if Plaintiff's alleged injury falls within the "zone of interest" for the statutes alleged to have been violated (and the Court has already determined

16

that Plaintiff is not the proper *party* to bring claims under either of the statutes she alleges to

have been violated), Plaintiff still lacks standing for her claims of injunctive relief unless she can

demonstrate that the alleged injuries are expected to continue in the future.  This she has not

done.   *See Clapper v. Amnesty Int'l USA*, 568 U.S. ---, ---, 133 S. Ct. 1138, 1141 (2013)

(threatened injury must be "certainly impending" to constitute injury in fact, and allegations of

possible future injury are not sufficient).  Moreover, the standing threshold for equitable relief is

not met by asserting that there are others in a prospective class who are at risk of being contacted

in the future by Foremost in violation of the Release Act.   *See Hackford v. Babbitt*, 14 F.3d

1457, 1465 (10th Cir. 1994) (a plaintiff generally must assert "his own legal rights and interests,

and cannot rest his claim to relief on the legal rights or interests of third parties"); *Valley Forge,*

454 U.S. at 472.

Other than her "zone of interest" argument, Plaintiff offers no other basis for standing,

except to claim that the New Mexico Declaratory Judgment act does not require a showing of

future injury.[5]  Plaintiff frames Count IV in the Complaint under New Mexico law, but

Defendant contends that the Federal Declaratory Judgment Act controls here as a result of

Defendant's removal of the case to federal court.  28 U.S.C. § 2201 *et seq.*  The Court agrees

with Defendant that federal procedural rules apply, and thus the federal Declaratory Judgment

Act would govern in the instant matter.  *See Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d

1384, 1386 (10th Cir. 1978) (recognizing that the federal Declaratory Judgment Act "involves

procedural remedies and not substantive rights) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64

(1938)); *accord Medtronic, Inc. v. Mirowski Family Ventures, LLC*, --- U.S. ---, ---, 134 S. Ct.

---

[5]   As Defendant notes, Plaintiff's sole argument on response focuses on her declaratory claim.  She does not contest
Defendant's position against her injunctive claim, and the Court finds Defendant's analysis on the issue based on
undisputed facts and supported by well-established legal precedent.  *See Reed v. Bennett,* 312 F.3d 1190, 1195 (10th
Cir.2002) (when party fails to respond to summary judgment, court must make additional determination that
judgment for the moving party is appropriate under Rule 56).

843, 849 (2014).  However, whether or not the New Mexico Declaratory Judgment Act applies here, the result would be the same since, contrary to Plaintiff's view, the New Mexico Act also requires proof of future harm when a plaintiff seeks forward-looking equitable relief.  *See ACLU of N.M. v. City of Albuquerque,* 144 N.M. 471, 479, 480-81 (2008) (rejecting request for equitable relief for lack of evidence of likely future harm).

> B.      Retrospective Claim for Monetary Damages in Declaratory Action

As Defendant observes, Plaintiff's sole argument on response focuses solely on her declaratory claim.  She does not contest Defendant's position against her injunctive claim, and the Court finds Defendant's analysis on the issue based on the undisputed facts is supported by well-established legal precedent.  *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (when party fails to respond to summary judgment, court must make additional determination that judgment for the moving party is appropriate under Rule 56).

In an effort to save her declaratory claim, Plaintiff attempts to tie the claim to a backward-looking monetary claim.  *See* Doc. 41 at 22 (Resp. to Defendant's Motion to Strike Plaintiff's Class Allegation) ("Plaintiffs seek a declaratory judgment that the actions of Foremost in contacting them during the prohibited period entitled them to a 'mechanically computable' entitlement [that is], nominal damages, to each Primary Class member.").  However, this strategy does not work because seeking money damages for relief does not change the fact that Plaintiff failed to establish standing for her claims for equitable relief.

*1.      Failure to plead*

Defendant first contends that Plaintiff has not pled a claim for monetary relief in seeking declaratory judgment and thus cannot plead this claim now.  Defendant further contends that leave to amend the Complaint to include such a claim would be futile because the claim would

fail on its merits.   The Court is inclined to agree with the latter assessment but is somewhat cautious about characterizing Plaintiff's Complaint as not seeking a declaration that Foremost violated her rights in the past.   *See* Doc. 42 at 18 ("[The] complaint in no way suggests she wants a declaration stating Foremost violated her rights in the past.").   It is true that the Complaint primarily seeks declaratory judgment to prevent Defendant's alleged violations from continuing in the future.   *See* Compl., ¶ 39.   However, the Complaint also requests that the Court declare that Defendant's actions "are unfair claims practices and violate New Mexico law."   Compl., ¶ 40. Because it could be argued that Plaintiff is seeking a declaration regarding conduct that occurred in the past, Plaintiff's request for money damages in her declaratory claim cannot be dismissed on that basis. Still, as the Court explains further below, the claim fails for other reasons.

2.       *No case or controversy when tied to money claims*

Defendant contends that there is no case or controversy, and therefore no basis for Plaintiff's declaratory claim, when a request for declaratory judgment will merely establish the liability aspect of a monetary claim for relief.   *See Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir. 1997).   In *Green,* the Tenth Circuit acknowledged that an earlier decision had allowed a declaratory relief claim to proceed, despite the fact that plaintiffs were seeking damages on the claim as well.   *Id.* 1299.   In that earlier case, *F.E.R. v. Valdez*, the plaintiffs were patients of a psychiatrist who was being investigated for medicaid fraud.   Plaintiffs sought damages as well as a declaration that the seizure of their patient records was unconstitutional.   The court held that the plaintiffs' claim for an injunction was mooted by a return of property, but their claim for declaratory relief was not moot because it was "similar to their claim for damages" and required the court "to determine whether a past constitutional violation occurred." *Id.* (citing. 58 F.3d 1530, 1533 (10th Cir.1995).   The *Green* court did not expressly overrule *Valdez* but concluded

19

nevertheless that "declaratory relief would be superfluous in light of the damages claim." *Id.* at 1300. The court's analysis was guided by the relevant law on the requirements for declaratory relief, finding that "the touchstone of the mootness inquiry" is whether the controversy continues to touch the legal relations of the parties." *Id.* at 1299 (citing *Cox. v. Phelps Dodge  Corp.,* 43 F.3d 1345 (10th Cir. 1994)).

The Court previously found that Plaintiff has not made any showing of a live or ongoing controversy with respect to herself, and thus there is no basis for her declaratory claim.  Framing her declaratory claim as seeking backward-looking monetary damages does not save the claim; a declaratory claim is superfluous since Plaintiff would still need to establish liability to recover such damages. *See PeTA, People for the Ethical Treatment of Animals v. Rasmussen,* 298 F.3d 1198, 1203 (10th Cir. 2002) ("[W]e consider declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred.  In such a situation, however, declaratory relief is "superfluous in light of the damages claim") (citing *Green,* 108 F.3d at 1300)).

*3.*     *No Viable Claim for Money Damages*

Defendants also contend that Plaintiff has no viable claim for money damages.  The Court has already determined that Plaintiff has no valid TPFA or UPA claim for monetary relief because she is not a proper party.   Plaintiff has not pled a separate claim for alleged violations of the Release Act but has embedded these alleged violations within her TPFA and UPA claims. However, it would not have done Plaintiff any good to plead a separate claim, since the Release Act contains no private right of action and offers only non-monetary relief. *See* NMSA § 41-1-1(C) (voiding settlement agreement or release of liability where in violation of statute); *Sedillo v. N.M. Dep't of Pub. Safety,* 140 N.M. 858, 862 (Ct. App. 2007) (finding that statute provided no

private right of action where statute applied only to administrative actions which precluded use of statute in "ordinary civil action"). Plaintiff cannot avoid these consequences by bootstrapping alleged violations of the Release Act, which affords no private right of action, onto statutes that do contain private rights of action affording monetary remedies. *See, e.g., Jackson v. Freightliner Corp.*, 96 F.3d 1453, 1996 WL 500666, at *5 (10th Cir. 1996) (unpublished table decision) (where the plaintiff lacks standing to bring a statutory claim, the court "will not allow him to bootstrap an otherwise unavailable cause of action by raising it under the guise of a common law tort claim").

Plaintiff's Release Act claim is also foreclosed for yet another reason—the plain language of the statute.[6] Subsection A of the Release Act describes the prohibited conduct: obtaining or attempting to obtain a settlement, release or statement from an injured person within fifteen days of the injury while that person is under a doctor's care. § 41-1-1(A). The statute further qualifies "statement" in that there must be an intent to use that statement in obtaining a settlement or release. § 41-1-1(A)(3). Subsection B creates the remedy if any of the prohibited conduct in subsection A occurs. Under subsection B, the statement, release or settlement may be disavowed within fifteen days after discharge from care. § 41-4-1(B). Plaintiff does not dispute that she did not avail herself of the remedy in subsection B because she did not disavow any statement she had made to the Foremost adjuster. Instead, she contends that the disavowal statement in subsection B does not apply to her because she did not enter into a "settlement agreement," a "general release of liability" or "any written statement" regarding the offensive calls. It is difficult to fathom what this argument means, since Plaintiff does not dispute that she had a conversation with Richardson, the adjuster. Plaintiff cannot have it both ways. Subsection

---

[6] Defendant does not argue, nor does the Court make any findings, on the merits of a Release Act claim. *See* Doc. 42 at 4, n.2. Rather, the Court's analysis is limited to whether Plaintiff's claim asserts a viable claim under *Iqbal*.

B of the Release Act is a remedy for alleged violations that are listed in subsection A, so if she is arguing that her statement does not come within the prohibited conduct in subsection A, then it is true than there is no remedy in subsection B, but it is also true that there is no alleged violation of the Release Act, either, and Plaintiff's claim would fail on that basis as well.

Accordingly, Plaintiff's equitable claims fail because Plaintiff does not show continuing or future injury to herself as a result of Defendant's continued actions.  Nor can Plaintiff escape this requirement by seeking backward-looking money damages for her declaratory claims because a declaratory claim seeking money damages is superfluous, and even if Plaintiff could attach a request for money damages to a declaratory claim, the claim still fails because Plaintiff is not a proper party to assert a claim under the TPFA or the UPA.  Finally, the Release Act neither affords a private right of action nor a money remedy, and thus whether Plaintiff impermissibly bootstrapped this claim to her TPFA or UPA claim (which she did) or pled the claim separately (which she did not do), the claim is not viable.

## IV.    Injunctive Relief Under the TPFA

Defendant has thus far successfully argued that Plaintiff's damages claims asserted under the TPFA fail because she is not an intended beneficiary of the insurance policy at issue here and that Plaintiff cannot show a likelihood of future harm as a basis for her equitable claims.  In addition to those reasons, Defendant also contends that even if Plaintiff could somehow overcome those obstacles, the TPFA simply does not offer injunctive relief as a remedy.  The statute does offer recovery of "actual damages," NMSA 1978, § 59A-16-30, but the only injunctive relief available is to the Superintendent of Insurance. *See* NMSA 1978, § 59A-16-27(D) (superintendent may cause an action for injunction to be filed in the district court of the county in which the violation occurred); *id.* § 59A-16-28(B) (superintendent may institute an

22

action to "to enjoin and restrain such person from engaging in such method, act or practice. . . .").

The intent of the plain language of the statute has been supported by case law.   In *Valdez v. Metropolitan Property & Casualty Insurance Co.,* No. Civ. 11-0507 JB/KBM, 2012 WL 1132414 (D.N.M. Mar. 31, 2012) (unpublished), United States District Judge James O. Browning explained that:

> . . . the specific grant to the Superintendent of Insurance to seek injunctive relief and the failure to include such a grant to private litigants, demonstrates **that the New Mexico Legislature did not intend for private litigants to be able to seek injunctive relief**. Furthermore, N.M.S.A.1978, § 59A–16–30'ss plain language confines private causes of actions to persons who have "suffered damages" to recover "actual damages." . . . It would therefore appear that the New Mexico Legislature did not mean to give a private cause of action to persons like the Plaintiffs, who seek only equitable relief.

*Valdez,* 2012 WL 1132414, at *23 (emphasis added).   Plaintiff responds by citing two cases that have no bearing on whether injunctive relief is available to her under the TPFA because both of them address a UPA claim, rather than a TPFA claim.   *See Truong v. Allstate Ins. Co.* 147 N.M. 583 (2010); *State ex rel. Stratton v. Gurley Motor Co.,* 105 N.M. 803 (Ct. App. 1987).   In *Truong,* the issue was whether the Superintendent's actual claims-handling practices preempted the plaintiffs from bringing an injunctive relief claim under the UPA. *See* 147 N.M. at 593. *Stratton* also considered a UPA claim, but the only connection *Stratton* has to a TPFA claim was the question of whether the TPFA claim was the exclusive remedy for unfair claims practices. *Stratton,* 105 N.M. at 805.   While the court held that the TPFA was not the exclusive remedy against insurers for unfair claims practices, the court did not engage in any discussion about whether a private individual could seek injunctive relief under that statute.

Plaintiff's reliance on cases that discuss UPA claims does not help her position, since the UPA expressly authorizes a private remedy of injunctive relief.  *See* NMSA 1978, § 57-12-10(A)

("A person likely to be damaged by an unfair or deceptive trade practice . . . may be granted an injunction . . . ."). The TPFA does not offer such relief, and Plaintiff's claim for injunctive relief is simply not available under the statute.

## V.  Defendant's Motion to Strike Plaintiff's Class Allegations and Dismiss Her Class Claims (Doc. 39).

The Court's rulings herein on Defendant's summary judgment motion completely dispose of all of Plaintiff's claims, although Plaintiff seems to disagree. Plaintiff expresses some misgivings regarding the status of her Release Act claims, arguing that Defendant failed to address this claim in its motion for summary judgment. However, as Defendant notes, the motion did indeed target this claim. Plaintiff alleged claims under the Release Act indirectly by bootstrapping alleged violations of the Release Act to the claims brought under the UPA and the TPFA (Counts I and II), which were addressed in the context of Plaintiff's inability to pursue these claims as a third-party who was not insured by Foremost and or as an intended beneficiary.

Plaintiff has also alleged claims purportedly arising directly under the Release Act: one for an injunction to prevent future violations of the Act in Count III, and another in Count IV for a declaration that Foremost violated the Release Act for the purpose of requiring Foremost to alter its future actions. Again, Foremost addressed those claims in its discussions of Plaintiff's standing to obtain relief on her equitable claims, arguing successfully that Plaintiff had no private right of action or access to monetary relief under the Release Act, and that Plaintiff's allegations and the undisputed facts were incompatible with the plain language of the Act. The Court came to the same conclusion as did Defendant: that Plaintiff's claim under the Release Act was not viable. Foremost is correct that its decision not to contest the merits of Plaintiff's

Release Act claim does not preclude summary judgment on the claim by arguing that it should be dismissed on other grounds.[7]

The only remaining claims asserted in the Complaint are for compensatory damages for the alleged violations of the TPFA and UPA.  Compl., Doc. 1-2, ¶¶21-33 (Counts I and II). With the dismissal of the TPFA and UPA claims, these claims are dismissed as well.

Accordingly, based on the Court's ruling favorable to Defendant on its motion for summary judgment, there is nothing that remains of Plaintiff's claims.  Accordingly, there is no reason for the Court to consider Defendant's Motion to Strike Plaintiff's Class Allegations and Dismiss Her Class Claims, since Plaintiff can no longer pursue this lawsuit.

## CONCLUSION

In sum, the Court finds and concludes that Defendant is entitled to summary judgment on Plaintiff's TPFA claim because Plaintiff is not an insured under the Foremost policy, and under New Mexico law she cannot be an intended third-party beneficiary of the policy, without which she cannot pursue a claim under the TFPA.  Even if Plaintiff was entitled to third-party beneficiary status under the Leavengoods' homeowner's policy, she is foreclosed from pursuing a TPFA claim because she has not complied with the judgment requirement in that statute.

The Court further finds and concludes that Plaintiff cannot pursue her UPA claim in Count I because New Mexico law currently restricts UPA claims to actual consumers of goods and services, and relevant law provides no basis to expand the UPA to give standing to a non-

---

[7]   While the merits of Plaintiff's allegations under the Release Act were not argued, the Court observes that Plaintiff would have had a difficult time showing that the adjuster's inquiry came under the prohibited practices in §41-1-1(A) of the Release Act.  Statements obtained for the purpose of investigating an accident would not be covered under the Act unless it could be shown that it was done "for use in negotiating a settlement or obtaining a release." Moreover, Plaintiff would not have been afforded the opportunity to argue the merits since, as discussed above, the Release Act does not provide a private right of action.

consumer third-party claimant like Williams.  Defendant is entitled to summary judgment on this claim as well.

The Court also finds and concludes that Defendant is entitled to summary judgment on Plaintiff's equitable claims in Counts III and IV seeking injunctive relief and declaratory relief, respectively.  Plaintiff seeks equitable relief to redress only alleged past harms, does not show continuing or future injury to herself as a result of Defendant's continued actions, or any imminent, real, or likely potential that she will again suffer the type of harm she alleges here.

Plaintiff cannot escape the imminent harm requirement by seeking backward-looking money damages for her declaratory claims because a declaratory claim seeking money damages is superfluous; and even if Plaintiff could attach a request for money damages to a declaratory claim, the claim still fails because Williams cannot proceed under the TPFA or the UPA as a proper party.

The Court finds and concludes that because the Release Act neither affords a private right of action nor a monetary remedy, any allegations under the Release Act do not form a viable claim, whether the claim is impermissibly bootstrapped to her TPFA or UPA claims (which Plaintiff did) or whether the claim had been pled separately (which Plaintiff did not do).

Finally, Defendants' Motion to Strike Plaintiff's Class Allegations and Dismiss Her Class Claims (**Doc. 39**), is denied as moot, in light of the Court's disposition of Defendant's Motion for Summary Judgment (**Doc. 25**).

**THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 25**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**FURTHER, IT IS ORDERED** that Defendant's Motion to Strike Plaintiff's Class Allegations and Dismiss Her Class Claims (**Doc. 39**) is hereby DENIED as MOOT, based on the Court's granting of summary judgment in Defendant's motion for summary judgment.

A Rule 58 Judgment shall issue separately.

_____

UNITED STATES DISTRICT JUDGE